IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DANIEL PEARSON,                )
                               )
            Plaintiff,         )
                               )
      v.                       )     1:18CV757
                               )
ANDREW SAUL,                   )
Commissioner of Social Security,[1] )
                               )
            Defendant.         )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Daniel Pearson ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on July 8, 2014, alleging a disability onset date of June 27, 2014 in both applications. (Tr. at 10, 207-18.)[2] His

---

[1] Andrew Saul became Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

applications were denied initially (Tr. at 72-99) and upon reconsideration (Tr. at 100-33). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 162-63.) On April 10, 2017, Plaintiff, along with his attorney, attended the subsequent hearing, during which both Plaintiff and an impartial vocational expert testified. (Tr. at 10, 32-71.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 24), and, on July 13, 2018, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

2

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 12.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> degenerative disk disease of the lumbar and cervical spine, degenerative joint disease of the bilateral knees, anxiety, depression, obesity and ischemic heart disease.

(Id.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 13-16.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform light work with the following, further limitations:

> can only perform simple, routine repetitive tasks at a non-production pace in a stable work setting with occasional superficial public contact, frequent contact

5

with supervisors or co-workers, but no teamwork or conflict resolution. [Plaintiff] can occasionally stoop, bend, squat or kneel.

(Tr. at 16.) Based on this determination, the ALJ found at step four of the analysis that Plaintiff could not perform any of his past relevant work. (Tr. at 22.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 23-24.)

Plaintiff now raises three challenges to the ALJ's RFC determination. First, he contends the ALJ failed to properly weigh the medical opinion evidence, specifically by giving only little weight to the opinions and medical source statements of Plaintiff's treating primary physician Dr. Caron and treating orthopedic surgeon Dr. Chewning. (Pl.'s Br. [Doc. #12] at 4.) Second, Plaintiff asserts that the ALJ failed to identify and obtain a reasonable explanation for an apparent conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"). (Id. at 11.) Third, Plaintiff argues that the ALJ failed to account for or address his need for a handheld assistive device. (Id. at 13.) After a thorough review of the evidence, the Court finds that Plaintiff's final contention merits remand.

As explained in the Act, "[t]he requirement to use a hand-held assistive device may . . . impact [a claimant's] functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.00(J)(4). Accordingly, an ALJ must consider the impact of a "medically required" hand-held assistive device on a claimant's RFC. See McLaughlin v. Colvin, No. 1:12CV621, 2014 WL 12573323, at *2 (M.D.N.C. July 25, 2014); Social Security Ruling 96-9p, Policy Interpretation Ruling Titles II And XVI: Determining Capability To Do

6

Other Work—Implications Of A Residual Function Capacity For Less Than A Full Range Of Sedentary Work, 1996 WL 374185, at *7 (July 2, 1996) ("SSR 96-9p").

Social Security Ruling 96-9p explains the impact of an assistive device on an RFC for sedentary work, and courts within this circuit have applied this ruling "to the light occupational base as well, since it involves even greater lifting than sedentary work. . . . Additionally, a plaintiff always bears the burden of proving her RFC, and therefore the standards in SSR 96-9p can be useful in determining if a plaintiff met that burden." Timmons v. Colvin, No. 3:12CV609, 2013 WL 4775131, at *8 (W.D.N.C. Sept. 5, 2013). Notably, SSR 96-9p provides the following guidance:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

1996 WL 374185, at *7.

In the present case, Plaintiff had a cane with him at the hearing, and testified that he used it for both walking and standing due to the swelling and pain in his knees and the pain in his back. (Tr. at 47-48.) Plaintiff testified that his primary care doctor, Dr. Caron, "suggested that it might help me." (Tr. at 48.) The ALJ questioned Plaintiff regarding the length of time that he could stand in place with the cane as well as walking with the cane. (Tr. at 49.) The ALJ considered this testimony, and in the decision, the ALJ specifically recounted Plaintiff's testimony that "he walks with a cane because Dr. Caron suggested that a cane would help him

ambulate," that "he could stand for 10 or 15 minutes with a cane," and that "he could only walk for 15 to 20 minutes with a cane." (Tr. at 16, 48-49.) However, there is no further mention of the need for an assistive device anywhere in the ALJ's decision. The ALJ did not mention the assistive device in Plaintiff's RFC, and nothing in the administrative decision indicates that the ALJ considered whether Plaintiff's cane was medically required. Notably, the record specifically includes a prescription from Dr. Caron dated January 27, 2015, indicating that Plaintiff required a cane for ambulation. (Tr. at 287.) However, the ALJ did not mention or address this prescription. In addition, Dr. Caron's opinion and Medical Source Statement dated January 8, 2016, specifically provides that Plaintiff cannot walk more than ½ a block without rest or severe pain, and could stand or walk less than 2 hours in an 8-hour working day. In addition, Dr. Caron's Medical Source Statement includes the following question:

> While engaging in occasional standing/walking, must your patient use a cane or other hand-held assistive device?

(Tr. at 656.) Dr. Caron answered "Yes." (Tr. at 656.) Although the ALJ ultimately assigned Dr. Caron's opinions as to Plaintiff's limitations little weight, in doing so, he did not discuss or even mention Dr. Caron's recommendations regarding Plaintiff's use of an assistive device.[5]

---

[5] The Court further notes that, in discounting the opinions of both Dr. Caron and Dr. Chewning, the ALJ repeatedly relied on records indicating that Plaintiff "walked with a normal gait from November 2014 to June 2015." (Tr. at 17, 19, 20, 21-22.) However, throughout his decision, the ALJ mentions little, if any, evidence of Plaintiff's ability to ambulate during the more than two years between June 2015 and August 1, 2017, the date of the administrative decision. This omission is significant in that Plaintiff's testimony and medical records reflect increased neuropathy and edema in his lower extremities during this period, as well as increased back symptoms. (Tr. at 850, 915, 929, 667, 1000, 1071, 1080, 1104, 1007, 1138.) In addition, it is not clear how a normal gait at a medical appointment is necessarily inconsistent with Dr. Caron's and Dr. Chewning's opinions that Plaintiff could not stand or walk for more than 2 hours in a day without rest or severe pain. Ultimately, in light of the remand required above, the ALJ can consider all of the evidence on remand, and the Court need not address that issue further at this time.

8

(Tr. at 20.) As the Western District of North Carolina noted in a similar case, "While it is true the ALJ gave the [treating physician's] opinion minimal weight overall, the ALJ did not address plaintiff's need for a cane. . . . [A] lack of analysis cannot be reviewed by this court or said to be justified by substantial evidence." Reep v. Berryhill, No. 3:17-cv-571-MOC, 2018 WL 3747285, at *5 (W.D.N.C. Aug. 7, 2018); see also McLaughlin, 2014 WL 12573323 ("On remand, the ALJ must assess whether McLaughlin's use of the cane is medically required, and whether McLaughlin always uses it. The ALJ then must offer sufficient reasons supporting the determinations concerning the cane, and modify the RFC and hypothetical questions to the VE (if needed)."); Fletcher v. Colvin, No. 1:14CV380, 2015 WL 4506699 (M.D.N.C. July 23, 2015) (finding remand was necessary where "[t]he ALJ in this case failed to explicitly address whether Plaintiff's need for a walker was medically necessary and, at most, seems to tacitly reject the notion that it could be").

To the extent that the Commissioner now relies on other evidence in an attempt to contradict or discount Plaintiff's testimony regarding his cane use, the Court will not consider *post hoc* rationalizations not relied upon by the ALJ. See Sec. & Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 87 (1943) (courts must review administrative decisions on the grounds upon which the record discloses the action was based); Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726 at *1 (M.D.N.C. March 25, 2014) (noting that this Court's "[r]eview of the ALJ's ruling is limited further by the so-called 'Chenery Doctrine,' which prohibits courts from considering post hoc rationalizations in defense of administrative agency decisions. . . . Under the doctrine, a reviewing court 'must judge the propriety of [agency] action solely by the grounds invoked by the agency. . . . If those grounds are inadequate or improper, the court is

powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.'"). In the present case, the ALJ was presented with a prescription for a cane and testimony and other evidence reflecting cane use, yet he did not evaluate whether that device was medically necessary in accordance with SSR 96-9p. Because there is a lack of analysis as to why the assistive device was omitted from Plaintiff's RFC, the Court concludes that this matter should be remanded to the ALJ for further proceedings, so that the ALJ can undertake this analysis in the first instance.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #14] should be DENIED, and Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #11] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 20th day of February, 2020.

                                                                       /s/ Joi Elizabeth Peake
                                                                     United States Magistrate Judge